Good morning, ladies and gentlemen. We're ready to hear oral argument now in the case of United States v. Weller. Mr. Sinan. Good morning, your honors. May it please the court, counsel. Your honors, my name is Nishay Sinan. I represent the appellant, Mr. Weller. I'd ask to reserve five minutes for rebuttal in this case. Your honors, this case stems from an insider trading indictment. We've raised several issues stemming from the actual sufficiency of the indictment, deficiency of the evidence in this case, and sentencing and also the forfeiture allegation. What I'd like to do before your honors is I can address questions as to any of the issues your honor has, but given the limited amount of time, I'm going to spend it on some specific issues that we have raised. To start off, though, I think there's some important facts that the court will look at to decide these issues. Number one is the relationship between the insider, the main insider, and the first tippee, the relationship between the first tippee and the second tippee, and the relationship between that second tippee, who is Mr. Cordes, and a third-level tippee, who is Mr. Weller, whose appeal is before your court. What we have here is a situation where the insider, Mr. Fleming, worked for Lifetime Fitness. He was the one that had the quote-unquote inside information. He shares that information with Brett Beshe, who is his friend, but their agreement as to the facts in this case, which bore out during the trial and are alleged in the indictment, was that they were going to split the profits. So it was a financial gain to both and could be considered a gift, as Solomon discusses that it could be a gift as long as the information is provided to a relative or a friend. The relationship then that Brett Beshe forms with Peter Cordes is also a relationship where they will split the financial profits of any trading that is to take place. Now, the relationship between Mr. Cordes and Mr. Weller, there is no discussion in the beginning to discuss profits. And as the government concedes in their briefs, it becomes the issue of whether or not it was a gift because of quote-unquote the friendship. So the first issue I put before your honors is whether or not the indictment sufficiently alleged that Mr. Weller knew that there was a breach of the fiduciary duty that was owed to Lifetime Fitness and whether or not the allegations are sufficient to show that he knew that Mr. Fleming, the insider, received a benefit, a personal benefit. And if you look at the indictment, specifically Paragraph 3F of this case, it indicates what Mr. Cordes told Mr. Weller. One, that Cordes had learned the material nonpublic information from Cordes' close personal friend. Two, that Cordes' close personal friend had learned the information from a close friend and senior level employee at Lifetime Fitness, Inc. And three, that the senior employee at Lifetime Fitness, Inc. had misappropriated the material nonpublic information from Lifetime Fitness, Inc. in breach of a duty of trust and confidence to keep such information confidential. Those are the allegations in Paragraph 3F of the indictment that relate to what Mr. Weller supposedly knew at the time of the charges. There is no allegation whatsoever in Paragraph 3F of the indictment. And, Your Honors, that starts off as the conspiracy count because then there's also the substantive allegations or counts as to money laundering, which Mr. Weller was found not guilty of. He was convicted of the conspiracy count, which 3F first appears. In 3F, there is no allegation that Mr. Weller knew of the personal benefit given to the insider if there was one in what form? Either cash, the friendship, or the gift of friendship. There just simply is no allegation. And because of that, that count is deficient in what allegations are required under the Supreme Court law in Dirks and even including Solomon. Now, the second issue as to the indictment, which is raised in our brief, is whether or not that issue carrying into the conspiracy, which we argue does not exist, the allegation of the personal benefit or gift, is whether or not there's simply one conspiracy charged here or multiple conspiracies charged. And prior to trial, the issue was raised as both issues were raised as to whether this conspiracy was sufficient in the information provided within the indictment. The argument here is if you look at the players who were involved, it indicates two separate overreaching conspiracies. One, which involves the insider and Beshley, Chastity Clark, and some of the other defendants who agreed to share profits. It was an upfront agreement that they came up with to share profits based on any trading made. Now, Peter Cordes then brings in four other individuals who are Alex Carlucci, Demetrius, Candelitas, Mr. Weller, and Mr. Manzur. It's clear that Mr. Fleming and Mr. Beshley do not know those four people, and it's obviously, as conspiracy law states, that the parties do not need to know each other for there to be a conspiracy. But there needs to be a common goal. Here, the first set of individuals, the original tipper, the first tippy, and the second tippy group had their agreement that they were going to share 50 percent of their profits from the insider trades. Then you have this Cordes individual who then reaches out to separate individuals that he knows and enters into agreements with those individuals to provide information to them, again, without indicating what the benefit to the inside tipper is, and agrees to have different arrangements with them. Based on the allegations in this indictment, there is not one overreaching conspiracy. There is at minimum two, the group who is doing this to share profits and the group that Peter Cordes then involves himself in. And therefore, the defense, Mr. Weller indicates, the indictment should have been dismissed because it's insufficient as a matter of law as to, one, the allegations as to the personal benefits, which then ties into the breach of fiduciary duty, and the conspiracy count because in itself, it charges more than one conspiracy. Those being the issues raised as to the indictment, the second issue raised by Mr. Weller is whether or not the evidence at trial was sufficient as to the conspiracy count. Again, as your honors are aware, Mr. Weller was found not guilty of the actual insider trading counts, which are count three, four, and seven. He was convicted on the conspiracy count. However, looking at the evidence most favorable in the light to the government, there's insufficient evidence, again, based on the testimony of all the parties who testified. And the only person that could testify as to what Weller may have been told is Mr. Cordes. There is no testimony in the record which indicates that Weller is advised that the tipper, Shane Fleming, is going to receive a personal benefit. The allegations and the testimony only indicate that they are close. There's a close friend relationship, three levels removed. And given that Mr. Weller is a third-party tippy, there needs to be sufficient evidence for him to have knowledge and scienter that he is creating or participating in a conspiracy to commit insider trading. And that evidence simply is not there. If you look at the testimony as it comes out from Mr. Cordes as to the issue of insufficiency, it shows that the defendant, Mr. Weller, did not have the information as to the relationship between Shane Fleming and Brett Beshey, that they were sharing profits. There's simply no testimony as to that, that Mr. Weller knew that. There is no information or evidence in the record to show that Brett Beshey and Peter Cordes had a split-the-profits relationship. And the evidence that's in the record is that a friend, that's it, a friend, high-level friend, gave the information to a close friend, who then gave it to Mr. Cordes, who then provided it to Mr. Weller. Based on Dirks, based on Evans from this circuit, based on Solomon, the record is void of any knowledge that Mr. Weller would know that this is an inside trade because of lack of evidence that there was a personal benefit to Mr. Fleming, the tippy. Was there any information or interrelationship where Mr. Weller talked to anyone else about how to deal with this, if something leaked out about this being an insider information? The evidence at trial, Judge Mannion, indicates that there was several communications between Mr. Cordes and Mr. Weller, that Mr. Cordes advised him of the information that was out there, or whether that his second-level close personal friend told him. And then there was conversations on how to buy call options. Those are the conversations on how to make call options trades. Okay. And those are the conversations that take place. The other evidence that's in the record between Mr. Cordes and Mr. Weller are, they had an individual testify lining up when the telephone calls between the two took place, and when the transactions actually took place. There are no conversations during the timeframe of the trading between Mr. Weller and anybody else other than Mr. Cordes, if that's the question you're asking, Your Honor. Well, that's something we can find. Okay. So, the appellant believes that there is simply insufficient evidence to show that he engaged in, one, an overall breaching conspiracy with the other individuals who, again, as Seventh Circuit case law says, you don't need to know all the individuals in the conspiracy, but they're asking an overall breaching goal. Here, there is no overall breaching goal, because Mr. Cordes is only dealing with Mr. Weller separately. Mr. Weller is not dealing with Mr. Carlucci. He's not dealing with Mr. Kenlepas. He's not dealing with Mr. Manzer at the time the trades are happening. That ties into the issue of whether or not a buy-sell jury instruction should have been given at the end of the trial. Now, prior to the end of the trial, Judge Kennelly reserved ruling on the substantive counts and did not reserve ruling on the conspiracy counts. There was a discussion on the record as to buy-sell. A buy-sell instruction was submitted. However, Judge Kennelly refused to give the buy-sell instruction. It was requested by the defense. It was a theory of the defense case, and it is applicable in this situation. Because, again, what you have here, based on the motion dismissed, based on the evidence that was presented before the trial court, is a situation where you have Mr. Cordes dealing directly with several individuals. The tipper does not know these individuals. The first-level tippy does not know these individuals. It's the second-level tippy who's making his own deals with four other individuals. And that information, and if you look at what buyer-seller discusses, and I know, as we'll concede, that it usually comes up in drug cases. But it can apply to financial fraud cases, as we've indicated in our brief, where you have a situation where it's information going back and forth, which you have Cordes giving information to Mr. Weller. Mr. Weller does his own research on that information and then decides to invest with that information to buy the lifetime fitness call options. And the relationship is specifically between Cordes and Weller. And, therefore, given the information that's before the jury, given the information that's been provided to the court, the buyer-seller jury instruction would have been appropriate in this case because then the jury could have focused on whether or not they believe that there was an overall reaching conspiracy as charged in Count 1 in the indictment, or whether or not Mr. Cordes and Mr. Weller had their own individual agreement for this one period of time. And the government argues, well, there was not a buy-sell because Mr. Cordes was not paid for this information. But if you look at what lies underneath the issues of buy-sell, credit is only one thing to look at. You have to look at the longevity of the relationship. You have to look at whether or not there's one ultimate goal amongst the people. And, again, in this situation, there is no conversation that Mr. Weller's proceeds will ever go back up to Shane Fleming, the tipper. There's no agreement in the record that indicates that. There's nothing in the record to indicate that Cordes was going to pay Brett Beshe, the first-level tippee, any of the money that was paid by Mr. Weller. So for that reason, we believe the court erred in not giving the buy-sell instruction in this case, specifically given the facts of the evidence that came out in trial. The defense theory was supported by that evidence, and that instruction should have been given. And the conspiracy instruction itself did not define the buy-sell agreement, which was part of the evidence and what was argued by defense counsel during the trial. The other issue, Judge, and then I'll reserve my time for rebuttal unless your honors have any questions, is the disparity in sentencing and the forfeiture allegation. In this case, Mr. Weller, a third-party tippee, received a year-and-a-day sentence. However, the tippee, Mr. Fleming, only got 60 days. There's a very large disparity in this case. As the case law says, the tippee is responsible for the entire, quote-unquote, insider trading fraud. Yet he was given 60 days. Mr. Manzer, who was at the same level, third-party tippee, but made less money in this case based on the trades, received four months. He would be at the same level of Mr. Weller, a third-party tippee. The reason the court gave Mr. Weller a severe sentence than the actual tip, the tip or, is because he made the most amount of money, which we believe, A, is inappropriate, and believe that the discrepancy in the sentencing in this case is one reason if this court does not make it- Counsel, why is the amount, you don't believe that makes any difference? Judge, it believes it's different, but if you're holding each defendant at the level of their culpability, putting the amount aside, the other defendants who were third-level tippees either got a pretrial diversion, which the court obviously cannot control, or Mr. Manzer, who was sentenced to four months. Mr. Weller is at the same level as the- Mr. Weller and Mr. Manzer would be at the same level, and as the case law says, the tipper, who would have been Shane Fleming in this case, is responsible for the entire amount of $800,000, but yet he gets six months. Without him, this crime could not have happened, yet he receives a substantially less sentence than does Mr. Weller. And Judge, real quickly, I'm sorry. Part of it was that he was determined to be the most sophisticated person and gambled his own, I don't want to use that word out of line, he put $50,000 plus into what should have been a risk and ended up with half a million. Judge, he did put more money into it. I think that was what the judge took into consideration, that's all. Judge, I don't disagree with you that he was a sophisticated investor, however, the tip board, none of this could have happened. So if Mr. Weller is responsible for the half million dollars, Mr. Fleming is responsible for the whole $886,000. And yet, Mr. Fleming receives a significantly less sentence. And Judge, I know I'm running out of time, the only issue regarding forfeiture, we rely on our briefs as to that issue, and I request to reserve the remaining three minutes and 45 seconds for a vote. Certainly, Counsel. Mr. Mitchell. May it please the court, good morning, my name is John Mitchell, and I'm appearing on behalf of the United States. This court should affirm the defendant's conviction because his knowledge of a personal benefit to the Lifetime Fitness Insider was properly alleged in the indictment. It was proven beyond a reasonable doubt at trial, and it was the subject of proper jury instructions. First, the district court correctly denied defendants motion to dismiss the indictment because it sufficiently alleged defendants knowledge of a personal benefit. An indictment is sufficient. Mr. Mitchell, your brief relies on paragraph 3 F of the indictment. Is there any other part of the indictment you're relying on for this purpose? The briefs, excuse me, Your Honor, so the for purposes of showing the defendants knowledge of the personal benefit, it's primarily that paragraph. Well, that's primarily is a nice weasel word. That's why I asked you if there's any other part. I wish you'd tell me what other part that is. Oh, so, Your Honor, for purposes of approving the defendant's knowledge, it's exclusively that paragraph. OK, so it's not primarily. That's it. All right. No, I'm I'm staring at that paragraph and I don't see the phrase personal benefit. How does one read knowledge of personal benefit into something that doesn't mention it? Yes, Your Honor. So the the indictment itself, that paragraph alleges that the defendant knew the information was tipped by a lifetime fitness insider to his friend and that in doing so, or it alleges that the senior employee at Lifetime Fitness had misappropriated the material nonpublic information from Lifetime Fitness in breach of a duty of trust and confidence to keep confidential. But you would have a breach of the duty of trust and confidence, even if the original misappropriator never made a cent and never made an extra friend. Indeed, that was the very allegation that was at the core of Dirks. And we know what happened. Dirks won in the end. Why is this allegation any better than the one the Supreme Court held insufficient in Dirks? Your Honor, this in Dirks and as reaffirmed in United States versus Solomon, Dirks specifies that, quote, when a when a tipper gives inside information to a trading relative or friend, the jury can infer that the tipper meant to provide the equivalent of a cash gift. The the allegation is that the defendant knew that the information had been tipped to a friend and that the tip when when making that tip, the insider breached duties that he owed to the to the company and to its shareholders. The phrase personal reached a duty that he owed to the company. That was just a given in Dirks. I'm right. I hope you can see my problem. The indictment, as written, does not seem to allege a personal benefit. It would have been easy to do that. It would have been plausible. Right. A jury finding of personal benefit would have been entirely sensible. But I just can't find the allegation in this indictment. And so, Your Honor, you're correct that the phrase personal benefit is not included in the indictment in particular. Dirks says personal benefit is a sine qua non of these kinds of prosecutions and the indictment doesn't allege it. It's as if the Department of Justice just went out of its way to try to find something to challenge the holding of Dirks. Well, that's fine, but that's not a job for a court of appeals. So, Your Honor, the allegations in the in the indictment allege that the defendant knew about the friendship between the insider and the person he tipped. And so at that point, I hate to say this, but that was true in Dirks, too. The source of the information in Dirks was a friend of Ray Dirks. The Supreme Court held that, well, Dirks won. I'm trying to figure out how this allegation and you say it's the only one that matters. Meats manages to distinguish this case from Dirks. So, Your Honor, the Dirks and subsequently Solomon confirmed that it's the intent of the tipper that matters. And so that is so it's is there a breach and is there a personal benefit? And so here, while under certain circumstances, a disclosure from an insider to a friend would not necessarily be a breach. And for a personal benefit, there doesn't appear to be any allegation that the original tippy, that the original recipient of the information intended to help anyone. It says a close personal friend had learned the information from a close personal friend, doesn't allege intent, doesn't allege intent to benefit, doesn't allege benefit. Right. It alleges pretty much exactly what the Supreme Court held was inadequate in Dirks. That's what bugs me. It would have been easy to allege something that passed the Dirks test. Understood, Your Honor. The the but the allegation as written satisfies the relatively low hurdle for alleging the elements of the crime and putting the defendant on notice. And specifically, Your Honor, because as as quoted from Solomon, Dirks specifies that when a tipper gives the inside information to a trading relative or friend, the jury can infer that the tipper meant to provide the equivalent of the cash gift. And so the defendant was put on notice by this indictment. Counsel, don't misunderstand me. I've I've said I don't think there would be any problem with making an allegation that would satisfy the requirements of Dirks and of Solomon. And the jury had it had there been such an allegation would have been within its rights to find for the prosecution. I'm trying to figure out how that allegation was actually made. Your answer is essentially, well, the jury could have found on this evidence that Dirks was satisfied. And I'm inclined to think that that's true. But there has to be the allegation and not just the sufficiency of the evidence. That's my problem. And I hope you see what the difficulty is. I understand, Your Honor. And I wasn't articulating as well as I could. What what I'm trying to what I was trying to to to get across was this concept that what the what the elements of the offense. So this isn't a case, obviously, where there is a statute with specific elements that need to be that need to be included in the indictment. It's elements that are created by courts that need to be incorporated in the indictment. And here the the key element that needs to be incorporated into the indictment or one of them is that the there was a breach of duty and the breach of duty is the element. And the way that the breach of duty is proved is by showing that there was a personal benefit to the insider. And so and the way that the personal benefit is proved is by showing that the disclosure was made from one friend to another. So the the indictment as written alleges that the information was passed from an insider to his friend and that the the and when doing so, the insider breached duties that he owed to the company and its shareholders. The allegation of the breach is the element. And the way that that is proved is through showing that there was a personal benefit to the insider and the personal benefit the insiders proved through the friendship. And therefore, your honor, it's the government argues that the the indictment was sufficient, satisfied the relatively low bar. Let me ask you the other thing that bugs me about this case. And that's the holding of the Second Circuit in the Geibel case from back in 2004. As I understand it, Geibel says it's impermissible to convict of a conspiracy unless the source of the information expected wide or open ended distribution of the information. I'm I'm worried here about the jury instructions. Did the jury instructions require the jury to find that Fleming wanted or expected wide distribution of the confidential information? The your honor, the jury instruction. So backing up and focusing on the allegations against Fleming and what Fleming testified to a trial Fleming, the allegations were that Fleming tipped the information to Bashi. Once again, I wish you'd focus on what I've asked. I'm not asking here about the allegations. I'm asking about the jury instructions. Did the jury, as instructed, necessarily find that Fleming wanted or expected wide distribution of the confidential information? The let me just look at the instruction itself, your honor. One moment. The instruction itself, as proposed by the defendant, was that you may find a personal benefit to the insider if you provide the information to a friend intending to benefit the friend. I'm trying to be as clear as I can that I'm asking about the holding of Gable, which said you can't convict of conspiracy without finding that the original source wanted or expected wide distribution of the confidential information. So get personal benefit out of your head and please address my question. I apologize, your honor. The the holding of Gable, as I understand it, was that the the insider was not subject to was was not subject to being held liable or prosecution because he didn't understand that the information was going to be widely disseminated. Here is it's a very different situation because we're talking about a the defendant understood that the information had come understood the exact chain of the corrupt chain, starting with the insider and ending with him. And so the defendant. So this case is just different from Gable in a sense that that focused on what must the insider know to be held, if I understand correctly. Is there any chance I could get you to address my question? I apologize, your honor. I'm not doing it intentionally. I just misunderstood. My question is whether the jury under the instructions given necessarily found that Fleming wanted or expected wide distribution of the confidential information. No, your honor. There's there's there's no specific instruction that directed the jury to find that the the insider expected or wanted wide distribution of the of the. Well, isn't that a problem under Gable? Your honor, first of all, of course, as you know, Gable is not binding on this court, but also I think Gable is. You have not asked us to disagree with the Second Circuit. I think in the in the brief, your honor, what we were arguing is that Gable is is is distinguishable and it's just a different situation because in Gable, the focus was on the insider and what the insider had, what the insider knew in terms of the dissemination of information. Here, the focus is on the defendant who is the downstream. Suppose we don't agree that Gable can just be brushed aside. Are you asking us to disagree with the Second Circuit? Your honor, I'm asking. I'm you've just conceded that what Gable required was not required by this jury instruction. Well, what I your honor, what I was conceding was that the instruction did not include a instruction that that in order to find this defendant guilty of insider trading, that it needed to find that the insider intended to have the information widely disseminated that I absolutely concede. I don't think that under Gable, the there's a requirement that under circumstances such as the ones presented by this case, that a jury would need to know that a insider intended not just to tip a friend for the friend's benefit and rather than for the benefit of the company, but that that the insider intended. I think, Mr. Mitchell, that you're confusing what's required for a substantive conviction with what's required for a conspiracy conviction. Gable, the thing that's interesting about this case is the jury acquitted on the substantive charges. And so the only thing that's before us is a conspiracy. It's really very hard to see how this defendant conspired with Fleming if Fleming didn't conspire with this defendant. Isn't that hard to see? Could you say the last part? It's hard to see that Fleming. A conspiracy is an agreement among a group of people. To find a conspiracy, you have to be able to find the agreement. Gable is about what is required to show that the source of the information agreed to share it with others. If there is no – if Fleming is not in on this conspiracy under the holding of Gable, it's very difficult to see how anybody else can be convicted of conspiring with him. Do you see the problem? I do, Your Honor. Under the – based on the jury instructions, the proper jury instructions, the jury was able to find that there was – that the defendant participated in a conspiracy based on his agreement exclusively with Curtis. That wasn't the extent of his knowledge of the conspiratorial purpose or his agreement, but that was sufficient. The defendant agreed with Curtis to use the information to trade. Now I'm really puzzled. So you're saying that Weiler could be convicted of conspiracy even if Fleming was not a member of the conspiracy? Yes, Your Honor. But it's only Fleming's breach of duty and personal benefit that makes a crime of this behavior. Exactly, Your Honor, but the – so first of all, the position is that there was a conspiracy that involved Fleming, the person he tips. No, that's what I'm pursuing. Yes, and so – Geibel concerns what would be needed to show that Fleming was a member of a conspiracy, and you've told me the jury didn't find that, and then you backed up to the argument that Weiler could be convicted of conspiracy even if Fleming was not a member of the conspiracy, even though any duty derives from Fleming. That's giving me some trouble. So I understood, Your Honor, two things. One is that the focus of the jury instructions were on the defendant Weiler's knowledge of the conspiracy and participation in the conspiracy, and so it was focused on what did he know and what was his participation, and so it focused on his agreement with others, and the instruction properly, using the Seventh Circuit instruction, was that you can find that the defendant participated in a conspiracy if there was an agreement with one or more other co-conspirators and a step in furtherance, an act in furtherance of the conspiracy with knowledge of the conspiratorial purpose. And so at a very basic level, the conspiracy could have been just the conspiracy agreement between Curtis and Weiler. That wasn't the extent of the evidence that was presented at trial, and the instructions didn't contemplate Fleming's knowledge of the dissemination of the information. There was evidence that was presented regarding Fleming's knowledge that the information was disseminated, but the jury instructions for defendant Weiler were focused on defendant Weiler's conduct rather than on defendant Fleming's knowledge that the information would be widely disseminated. Going back to Judge Easterbrook's question, are you saying that wide distribution would reduce the value of insider information? Because if a lot of people knew about it, it wouldn't be $65 regained once it's made public. Your Honor, what I was referring to was simply did, and if I understood correctly, Judge Easterbrook's question was focused on whether Fleming knew that the information was going to go beyond Beshe and end up to a person like Weiler. And the answer is the evidence proved that he did, the indictment alleged that he did, the jury instructions were silent on that issue because the jury instructions were focused on Weiler and Weiler's knowledge. Your Honors, I see that my time is out, and unless there are additional questions, I'd ask if I could briefly conclude. No, there seem to be no more questions. Thank you very much, Mr. Mitchell. Thank you, Your Honor. Mr. Shannon, anything further? Judge, just based on even the government's recital of what they believe the theory of the conspiracy is, under Geibel, under conspiracy law, there's a defect in both the indictment and the proofs at trial. And Judge, based on the other issues, unless there's questions from Your Honors, we'd rely on our briefs, which we believe put the argument straightforward to this court. Okay, thank you very much, Counsel. The case is taken under advisement.